Argued October 26, 1959, affirmed January 20, 1960

# STRASBAUGH *v.* BABLER BROS. ET AL *v.* STATE OF OREGON *v.* SHEARMAN

348 P. 2d 448

*Martin P. Gallagher,* Ontario, argued the cause for the appellant. With him on the brief was Harold A. Lewis, Ontario.

*Frank C. McKinney,* Assistant Attorney General, Salem, argued the cause for the respondent State of Oregon. With him on the brief was Robert Y. Thornton, Attorney General, Salem.

Before McALLISTER, Chief Justice, and PERRY, SLOAN, REDDING and KING, Justices.

SLOAN, J.

This is an appeal from a decree awarding to the intervenor, state of Oregon, title to certain land in Malheur county situate in the bed of the Snake river. The appellant is the counter-intervenor, Wilhemine Kiesel Shearman, individually, and as trustee for the Kiesel estate. Neither of the original parties to this proceeding, plaintiff and defendant, have participated in this appeal. The respondent intervenor will be referred to herein as state and the counter-intervenor as the appellant. For the reasons following, the original plaintiff and defendant became mere bystanders in this case.

Prior to the inception of this case both the plaintiff Strasbaugh and the state had asserted incidents of ownership to the land in question. The plaintiff had removed considerable gravel from the land and sold it for commercial purposes. The state highway department had given a permit to its contractors, the defendants Babler Brothers, Inc. and W. R. Rogers and Don Rogers, co-partners doing business by the assumed name of Rogers Construction Company, and

Lloyd Babler as an individual, to remove gravel from the same land for use in road building. The plaintiff's original complaint sought damages from the named defendants for the taking of this gravel. No issue of title to the land was presented by this complaint. It merely sought damages for the conversion of the gravel.

Before any disposition of that claim the state obtained leave to intervene and filed a complaint in intervention alleging that it had title to the land. In the meantime the appellant, Kiesel estate, by deed, acquired all of the title to the land held by plaintiff. As a result the appellant also sought and obtained leave to intervene as a counter-intervenor and filed what was designated as a counter-complaint in intervention. This pleading denied the state's claim of title and asserted title to the land in the appellant and prayed that its, Kiesel estate's, title be quieted and that the state be enjoined from asserting any claim of title to the land. Appropriate answers were filed by these parties to the respective complaints in intervention. It is important to note that both the state and appellant, in their pleadings, sought equitable determination of the issues presented. The case proceeded to trial in equity on the question of title. The trial court found the state to have title to the land. The finding that the state had title to the land terminated the plaintiff's claim for damages.

■ The land in dispute is land which has accreted within the bed of the Snake river. The problem is strictly a factual one. We are called upon to decide if the land resulted from accretions to an island existing in the riverbed or did the accretion form to and become a part of the original shoreline. It is admitted that the state was and is the owner of the

bed of the stream. *State v. McVey,* 168 Or 337, 345, 121 P2d 461, 123 P2d 181. Oregon Admissions Act, ORS Vol 5, 1079; ORS 273.010 (6). It is also admitted that the state is, therefore, the owner of all islands within the stream, and that if the disputed land resulted from accretion to an island it became the property of the state. *Katz v. Patterson et al,* 135 Or 449, 296 P 54. See also, *Freytag v. Vitas,* 213 Or 462, 326 P2d 110. On the other hand, the state concedes that if the land was formed by accretion to the shoreline it became the property of the riparian owner, the appellant in this case.

The trial court found that an island, or islands, had existed in the river at the point in question since the year 1891, at least; that the land subject to this dispute was the result of accretive additions to this island. We agree. It is not necessary to attempt a review of the voluminous evidence. The transcript of testimony is almost 700 pages in length and the exhibits fill a large box. The facts are of interest only to these litigants. The trial court's review of the evidence at the conclusion of the trial coincides with our view of the evidence. We have carefully reviewed the entire record and our only difference with the trail court would be that we find the evidence is more persuasive in favor of the state's theory than it appeared to be to the trial court.

The island, and the land we find accreted thereto, is situate in a bend of the Snake river. The evidence supports a belief that the land in dispute was created in the first instance by the formation of an island in the more shallow part of the river adjacent to the Oregon shore. The shoreward side of the island was then gradually built up until the island became a part of the land. It is probable that this occurred more

than once and that the land is the result of two or more islands that were formed in this manner. The indisputable evidence, in the form of aerial photographs taken since 1938, reveals that the same process of development continues. Other evidence is equally convincing that this is common to the Snake river for at least several miles of its course up river from the immediate land involved here.

One other factor requires us to give additional weight to the findings of the trial court. We have mentioned that the evidence contains numerous exhibits. Despite the considerable care exercised by both court and counsel in this case, we are still faced with witnesses referring to "here" and "there" on the exhibits which renders the evidence meaningless to us. This was particularly true of parts of the testimony of a former trial introduced into the evidence of this case. This, of course, was not true of the ability of the trial court to observe the reference the witness was making. It appears that the trial judge could comprehend considerable of the testimony that is made meaningless in the transcript for the reason just given. In total, we find substantial evidence to support the determination of the trial judge and concur in the opinion he gave.

There is one assignment which requires specific mention: At the conclusion of trial of the case the appellant moved the court to dismiss the intervening complaint of the state and transfer the case to the law docket for trial as an action at law. The failure of the trial court to sustain this motion is assigned as error. If there was any merit to the motion at all, we hold that it was not timely made. As before noted, the pleadings of both the state and the appellant sought both specific and general equitable relief. The

case proceeded to trial as a suit in equity without the intervention of a jury. No objection was made by appellant at that time. It is well settled in Oregon that a party "who wishes to challenge the jurisdiction of the court [in equity] must do so promptly; and, normally, his objection comes too late if it is made for the first time after the trial has begun." *Barnes v. Eastern & Western Lbr. Co.*, 205 Or 553, 613, 287 P2d 929, and the many cases there cited. In the instant case the pleadings presented issues of equitable cognizance, in part, sought by appellant's own pleadings. The assignment is without merit.

The brevity of this opinion is not an indication that we are unaware of the importance of this case to the respective parties. It would require many pages to detail the evidence. This has already been well done by the trial judge and the repetition would aid no one.

The decree is affirmed.