Argued February 7, affirmed as modified **April 24, 1968**

# PORTLAND YACHT CLUB, *Plaintiff, v.*
# STATE LAND BOARD, *Appellant,*
# CLARK ET UX, *Respondents and*
# *Cross-Appellants.*

440 P. 2d 212

*Walter L. Barrie,* Assistant Attorney General, Salem, argued the cause for appellant. With him on the briefs were Robert Y. Thornton, Attorney General, Salem, and Mallory C. Walker, Assistant Attorney General, Salem.

*Ralph C. Sipprell,* Portland, argued the cause for respondents. With him on the briefs were Curtis W. Leichner, Buss, Leichner, Lindstedt and Sipprell, Portland.

Before PERRY, Chief Justice, and SLOAN, GOODWIN, HOLMAN and LUSK, Justices.

SLOAN, J.

Plaintiff, Portland Yacht Club, initiated this suit to quiet title to a land mass, as it was referred to in the record, that was formed in the waters of the Columbia River. Defendants Clark, as the purported record title owners, to the disputed land mass and the State were made parties defendant. After the trial commenced, the Yacht Club withdrew its claim of ownership and retired from the case. The trial then continued as to the disputed claim between defendants Clark and the State. Clarks claimed that the property in question was land included within their record title and that some of it had accreted to the property they

owned. The State claimed that the land mass was actually an island that had formed in the bed of the river, that it had never been owned by Clarks or their predecessors in title, and that the State was, therefore, the owner. The issues of law involved are not in dispute. The case presented issues of fact which the trial court resolved in favor of defendants Clark and entered a decree in their favor. The State appeals.

Clarks filed a cross-appeal which will be mentioned later.

The dispute results from the following background facts: In 1906, the State, by a confirmation deed, relinquished its rights to certain tidelands in the area of the disputed land. The land described in the 1906 deed was then a peninsula extending into the Columbia River from the Oregon shore. This peninsula later separated from the Oregon shore and formed an island. Later the island became known as Tomahawk Island. In 1939, defendants Clark became the owners of the easterly end of Tomahawk Island which, they contend, included the land in dispute.

The State contends, and introduced evidence tending to prove, that between 1906 and 1939 most of the land described in Clarks' deed completely disappeared and that beginning about 1935 the disputed land started to form as an island or sand bar to the east of Tomahawk Island. The State claims this disputed land mass did not exist until that time and was never a part of Tomahawk Island.

Clarks claim that during all of this time that the disputed land was a part of Tomahawk Island and owned by them or their predecessors. Evidence presented by Clarks would tend to prove this factual claim.

As indicated above, if the State's evidence is ac-

cepted as proving its claim, the law clearly entitles the State to have a decree in its favor. *State v. Imlah et al*, 1931, 135 Or 66, 294 P 1046. If Clarks' evidence is the more persuasive, this decree must be affirmed.

The record consists of the testimony of several witnesses who testified from memory as to the existence or non-existence of the disputed land. Much of this evidence is conflicting. Other evidence consists of several survey maps prepared at various times by United States Coast and Geodetic Survey. Other maps and charts which were prepared as a result of other surveys were also admitted in evidence plus numerous photographs. Some additional charts and maps were prepared by experts who testified for each party.

Much of the evidence relating to the exhibits, that is the several charts, photographs and maps, is difficult to follow from the written record. It is not always clear as to which exhibit the witness was referring to or as to what part of a given exhibit when the witness spoke of "here" or "I have traced this with the pointer" and many similar references. Some of the references to the exhibits are impossible to identify.

■ For this reason we must place particular reliance on the trial court's ability to have seen the witnesses and their references to the exhibits and evaluate the testimony offered. *Strasbaugh v. Babler Bros. et al*, 1960, 220 Or 35, 39, 348 P2d 448.

■ Because of the state of the record and because the weight to be given much of the evidence is decisive, we think the trial court's finding should be affirmed. Our own reading of the record is also more convincing that the disputed land was in existence for the period of time in controversy. We are not satisfied that Tomahawk Island had eroded away and a new

island formed within the area at the time claimed by the State. Other peripheral issues were raised but we consider them to be only incidental to the disputed issue of fact.

The State, on appeal, questions Clarks' chain of title. This issue was not presented to the trial court. Clarks did present a *prima facie* showing of the chain of title that was not disputed by evidence.

■ The decree, however, must be modified in one respect. The decree awards Clarks' title to certain submerged lands underlying an area described as North Portland Harbor. There is no showing that Clarks are entitled to claim such lands and it should be eliminated from the decree.

■ The cross-appeal results from the refusal of the trial court to quiet the title in the Clarks to the easterly tip of land in dispute. Clarks claimed title by virtue of alleged accretion to their property. The tip of land was not included in the deed to Clarks which they received in 1939. The trial court found that the tip of land was in existence as of that time and refused to include the area in the decree. We agree with the trial court's finding. The cross-appeal is denied.

Except as modified, the decree is affirmed. Neither party shall recover costs.